Reese, J.
delivered the opinion of the court.
At September term, 1836, of the circuit court of Montgomery county, Mary P. Andrews, then widow and relict of the said Baker Andrews deceased, filed her petition under the act of 1827, ch. 54, for the sale of a tract of land in that county, upon the allegation, that it could not be conveniently divided between the widow and the heirs; and that it was manifestly for the interest of the heirs, that the same should be sold, and the proceeds be divided. The heirs, who were all minors, appeared by their guardian, ad litem, and submitted their interest to the court. The matter was referred to the clerk, who reported the facts to be as set out in the petition, and a decree was had, that the tract of land should be sold on a credit of one and two years, and bond and security for the consideration be taken, and a lien retained.
At the January term, 1837, the clerk who had been appointed commissioner to sell, in the decree, reported that he had sold the same for $2,231 10, and had taken the bonds of the purchaser, with one surety for two amounts of $1,115 55, payable the one in one year and the other in two years. The sale was confirmed by the decree of the court then, and the commis *593 sioner ordered to retain possession of the bonds, to collect the money when due, and pay it into the court. At the May term, 1839, of said court, it being represented to the court, that the widow and minor heirs of Baker Andrews deceased, resided in the State of Illinois, and that the latter had a guardian there duly appointed, it was ordered by the court, that the commissioner pay over to said guardian thq proceeds of said bonds, upon his entering into bond with sufficient security, payable to the chairman of the county court of Montgomery, conditioned for his faithfully accounting for as guardian, and paying to said minor heirs when of age, the two thirds of said fund, and for his loaning out the one third, and paying to the widow, the interest thereon, semi-annually during her life, and then for the payment of the principal on her devise, to those entitled to it.
And at May term, 1841, William B. Pegram, the said Illinois guardian, failing theretofore to enter into said bond and surety according to the tenor of the last mentioned decree or order, presented his petition to the court, alledging therein, that he as general guardian in Illinois, had given sufficient surety in his general guardian bond, and suggesting the inconvenience of attending to the business here, and that there is a higher rate of legal interest in such cases, in Illinois, where all the parties reside, and concluding with a prayer that the clerk or commissioner pay over the money to him. And the court being satisfied with the sufficiency of the general guardian bond, modified the former order or decree, and directed that two thirds of the money be paid over to said Pegram, the Illinois guardian, and the other third also on his producing an order from the widow of Baker Andrews. The writ of error, in the case before us has been sued out to reverse this last decree. And the only question here is, whether it be erroneous. It is very clear that it is erroneous; the guardian in Illinois, as such, would have no right to claim, it is believed, from the hands of a Tennessee administrator ever, the surplus of the personal estate belonging to his wards, the distributees, unless he should give a special bond, for the specific Tennessee fund, either here or in his own State, unless indeed the court here were satisfied, not only of the .sufficiency of the bond, and the solvency of the sureties, but that *594 by the law of the State, where the guardian was appointed, and his wards resided, the general guardian bond be held to comprise and embrace, and render the sureties liable for such Tennessee fund. This results from the principles determined in the case of Keeton vs. Campbell and Bradford, 2 Hump. Rep. But here is a case, where if the minor heirs of Andrews, had resided in Tennessee, if it had been the domicil of the deceased parent, and of themselves and they here had a general guardian, this specific fund created out of the real estate, by the action of a court of chancery should not be permitted to go into the hands of such general guardian, without a special bond embracing such fund, because it is believed the sureties in the general guardian bond, would not be held bound for it.
The decree of 1839, correctly proceeded upon this principle, and was well enough, except that we think, that the bond should not have been ordered to be taken in the county court; the bond should have been taken in the court where the fund was.
Nor would we hold that a court of chancery should in such cases, always require a bond to be executed in Tennessee and by Tennessee sureties. The interest of the parties and sometimes the necessity of the case, may make it not improper, that the bond should be executed, and the surety be given in the State where the general guardian and wards reside; but in such case, the court will see to it, that the guardian is a fit person, that the surety is amply good, that the bond in form and substance is valid by the law of the State where it is intended to be enforced, and that it clearly embraces, and renders the obligors liable for the- fund in question.
The order or decree of May term, 1841, will, therefore, be reversed, and set aside, leaving.the decree of 1839, to remain unaffected and unmodified by it..